IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| **Malikie Innovations Ltd. and** | § | |
| **Key Patent Innovations Ltd.,** | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| **Vivint Smart Home, Inc. and NRG** | § | JURY TRIAL DEMANDED |
| **Energy, Inc.** | § | |
| | § | |
| Defendants. | § | |

## COMPLAINT FOR PATENT INFRINGEMENT AND JURY DEMAND

Plaintiffs Malikie Innovations Ltd. ("Malikie") and Key Patent Innovations Ltd. ("KPI") (collectively, "Plaintiffs"), by and through their undersigned counsel, bring this Complaint for patent infringement and damages against Defendants Vivint Smart Home, Inc. ("Vivint") and NRG Energy, Inc. ("NRG Energy") (collectively, "Defendants") and, in support, allege the following:

## PARTIES

1. Plaintiff Malikie is the successor-in-interest to a substantial patent portfolio created and procured over many years by BlackBerry Ltd., formerly known as Research in Motion Ltd., and its predecessor, subsidiary, and affiliated companies (collectively, "BlackBerry"). Malikie is an Irish entity duly organized and existing under the laws of Ireland. Malikie has registered offices at: The Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin A96 VR66, Ireland.

2. Plaintiff KPI is the beneficiary of a trust pursuant to which Malikie owns, holds, and asserts the Asserted Patents (set forth below). KPI is an Irish entity duly organized and existing under the laws of Ireland. KPI has registered offices at: The Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin A96 VR66, Ireland.

3. On information and belief, Defendant Vivint Smart Home, Inc. ("Vivint") is a corporation duly organized and existing under the laws of the United States, with a principal place of business at: 4931 North 300 West, Provo, UT 84601. On information and belief, Defendant NRG Energy, Inc. ("NRG Energy") is a corporation duly organized and existing under the laws of the United States, with a principal place of business at: 910 Louisiana St. Houston, TX 77002. Vivint is a subsidiary of NRG Energy. *See* https://www.nrg.com/about/newsroom/2022/41771.html.

4. On information and belief, Defendants and/or their employees or officers direct and/or control the actions of their direct and indirect subsidiaries. On information and belief, Defendants and/or their employees or officers direct and/or control the actions of these entities by, for example, inducing and contributing to the actions complained of herein.

5. Defendants and their affiliates regularly contract with customers regarding products made for or on behalf of those customers.

## PATENTS IN SUIT

6. Malikie is the assignee of and owns all right and title to U.S. Patent Nos. 7,917,829 (the "'829 Patent"); 8,583,980 (the "'980 Patent"); 8,334,847 (the "'847 Patent"); and 11,119,756 (the "'756 Patent) (collectively, the "Asserted Patents").

7. BlackBerry developed numerous innovative and diverse technologies, including groundbreaking inventions pertaining to mobile devices and related software and wireless communications technology. Some of these groundbreaking inventions are described and claimed in certain of the Asserted Patents.

8. The '829 Patent, entitled "Low-Density Parity-Check (LDPC) Code" was duly and lawfully issued on March 29, 2011. A true and correct copy of the '829 Patent is attached hereto as Exhibit 1.

9. The '980 Patent, entitled "Low-Density Parity-Check (LDPC) Code" was duly and lawfully issued on November 12, 2013. A true and correct copy of the '980 Patent is attached hereto as Exhibit 2.

10. The '847 Patent, entitled "System Having User Interface Using Object Selection and Gestures" was duly and lawfully issued on December 18, 2012. A true and correct copy of the '847 Patent is attached hereto as Exhibit 3.

11. The '756 Patent, entitled "System and Method for Controlling Updates to Internet-of-Things Devices" was duly and lawfully issued on September 14, 2021. A true and correct copy of the '756 Patent is attached hereto as Exhibit 4.

12. Malikie sent Defendants a letter (addressed to Vivint's Chief Executive Officer (CEO), Mr. David Bywater), on or about September 11, 2024, offering a license to Malikie's patent portfolio. Malikie's notice letter specifically identified the '829, '980, and '847 Patents and a set of exemplary Defendants' products or services that Malikie believed were and/or are infringing these patents (on a patent-by-patent basis). Malikie's letter also specifically noted that its portfolio included patents relating to the IEEE 802.11 ("Wi-Fi") standard and that Malikie is willing to offer Defendants a license so that it could continue its use of the patented technologies. The September 11, 2024 letter was sent via courier mail and e-mail. Neither Mr. Bywater nor anyone at Vivint responded to Malikie.

13. Malikie followed up with the Executive Vice President and General Counsel of NRG Energy, the parent company of Vivint, Mr. Brian Curci, and President of NRG Consumer,

Mr. Rasesh Patel with emails on or about October 1, 2024 and October 8, 2024. Furthermore, Malikie sent Mr. Curci and Mr. Patel an additional notice letter, via courier mail and e-mail, on or about October 18, 2024. The October 18, 2024 letter followed up on the prior correspondences and further identified additional patents. The October 18, 2024 letter further identified a rate at which Defendants could license Malikie's standards-essential patents related to the Wi-Fi 802.11 standard. Malikie's communications to Vivint included a request for a call or meeting to discuss Malikie's patent portfolio and possible licensing terms with Malikie.

14. Malikie sent additional follow-up emails on November 4, 2024, December 2, 2024, December 18, 2024, January 10, 2025, and February 3, 2025. Vivint's counsel, Baker Botts, responded directing all future correspondence to them. Malikie and Baker Botts attempted to negotiate an NDA, between February 11, 2025 and April 1, 2025. On April 4, 2025, Malikie sent exemplary claim charts to Baker Botts. Baker Botts indicated that they would review the claim charts and respond to Malikie. Neither Baker Botts nor anyone else at NRG Energy or Vivint or acting on Defendants' behalf has responded. As such, Malikie has been left with no choice but to bring this action to enforce its rights as the owner of valid and valuable patents that Defendants are willfully infringing.

### WI-FI STANDARD AND PLAINTIFFS' FRAND OBLIGATIONS

15. The Institute of Electrical and Electronics Engineers ("IEEE") is a professional association whose activities span a broad range of disciplines, including telecommunications. As part of its activities, the IEEE develops and publishes industrial standards, including standards pertaining to wireless communications.

16. The IEEE-Standards Association (SA) operates within the IEEE and develops global standards in various industries, including Wi-Fi (802.11) standards. The IEEE 802.11

standards, developed by the IEEE-SA, provide a set of media access control (MAC) and physical layer (PHY) specifications for implementing Wi-Fi. The IEEE-SA requires participants to commit to abide by their Intellectual Property Rights ("IPR") policies, which set forth the rights and obligations of their members. For example, members are required to disclose intellectual property rights that disclose standard essential and potentially standard essential patents and patent applications relevant to IEEE standards. Further, the IEEE requires members disclosing IPR to indicate, via a Letter of Assurance ("LOA"), whether they will commit to granting implementer members a license under terms that are reasonable and nondiscriminatory (RAND).

17. Blackberry has been an active participant in the IEEE's development of industry standards, including many of the 802.11 standards. On numerous occasions, Blackberry notified the IEEE in public LOAs that its patents could include Essential Patent Claims with respect to at least the IEEE 802.11-2102, 802.11k, 802.11mb, 802.11n, 802.11p, 802.11r, 802.11s, 802.11u, 802.11v, 802.11w, 802.11y, 802.11z, 802.11aa, 802.11ad, 802.11ae, and 802.11.2 standards. Blackberry further indicated that it will grant a license to patents that could include Essential Patent Claims under RAND terms.

18. As mentioned above, Malikie offered Defendants the chance to license its SEPs, including those covering IEEE 802.11 standards, under RAND terms. Particularly, Malikie contacted Defendants and its representatives on or about September 11, 2024, to notify Defendants of its infringement of numerous patents (including the '829, '980, and '847 Patents). Malikie sent additional correspondence to Defendants on several occasions, including on or about October 1, 2024, October 8, 2024, and October 18, 2024. In its October 18, 2024 correspondence, Malikie offered a specific RAND royalty rate for all patents essential to the IEEE 802.11 standards or that

otherwise fall within the commitments to IEEE made by the owner of the patents at the time. Defendants did not respond.

## JURISDICTION AND VENUE

19. Plaintiffs incorporate by reference paragraphs 1-18 herein.

20. This civil action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including without limitation 35 U.S.C. §§ 271, 281, 283, 284, and 285. Thus, this is a patent infringement lawsuit over which this Court has subject matter jurisdiction under, *inter alia*, 28 U.S.C. §§ 1331, 1332, and 1338(a).

21. This Court has general and specific personal jurisdiction over Defendants because, directly and/or through intermediaries, Defendants have committed acts within this District giving rise to this action; transact and conduct business, directly and/or indirectly, in this District and the State of Texas; transact and conduct business with residents of this District and the State of Texas; and are located in this District.

22. Defendants have infringed and continue to infringe the applicable Asserted Patents (defined below) within this District and the State of Texas by making, using, selling, offering for sale, and/or importing in or into this District and elsewhere in the State of Texas, products and services covered by claims of the Asserted Patents, including without limitation products that, when made or used, practice claimed methods of the Asserted Patents. Defendant, directly and/or through intermediaries, makes, uses, sells, licenses, offers for sale, imports, ships, distributes, advertises, promotes, and/or otherwise commercializes such infringing products and services in or into this District and the State of Texas. Defendants regularly conduct and solicit business in, engage in other persistent courses of conduct in, and/or derive substantial revenue from goods and services provided to residents of this District and the State of Texas.

23. Defendants are doing business, directly and/or through respective agents, on an ongoing basis in this judicial District and elsewhere in Texas and the United States, and have committed acts of infringement in this District. For example, Vivint has a business location at 5212 Tennyson Pkwy Suite 150 Plano, TX 75024. *See* https://www.vivint.com/locations/texas/plano. Vivint further advertises providing its services and products in Marshall and Tyler, Texas. *See* https://www.vivint.com/locations/texas/tyler; https://www.vivint.com/locations/texas/marshall. Furthermore, NRG Energy has an office location at: 2745 Dallas Pkwy, Plano, TX 75093. *See* https://careers.nrgenergy.com/nrg/job/PLANO-Assistant-Sales-Manager-TX-75093/1286153900/. Plaintiffs' causes of action arise, at least in part, from Defendant's contacts with and activities in and/or directed to this District and the State of Texas.

24. On information and belief, Defendants make, use, sell, offer to sell, and/or import infringing products into and/or within this District, maintains a permanent and/or continuing presence within this District, and has the requisite minimum contacts with this District such that this venue is a fair and reasonable one. On information and belief, Defendants have transacted and, at the time of the filing of the Complaint, are continuing to transact business within this District.

**FIRST CLAIM**

**(Infringement of the '829 Patent)**

25. Plaintiffs re-allege and incorporate herein by reference paragraphs 1-24 of their Complaint.

26. The '829 Patent is generally directed to constructing a low-density parity-check (LDPC) code using a structured parity check matrix and expanding the base parity check matrix into an expanded parity check matrix.

27. Defendants have been on notice of the '829 Patent and a specific factual basis for its infringement of the '829 Patent since at least September 11, 2024. On information and belief, Defendants did not take any action to stop their infringement.

28. Defendants have, under 35 U.S.C. § 271(a), directly infringed, and continue to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claim 6 of the '829 Patent, by making, using, testing, selling, offering for sale, and/or importing hardware and/or software including devices compliant with IEEE 802.11 standards (excluding any products licensed under the '829 Patent), such as the Vivint Doorbell Camera Pro (VS-DBC350-WHT). An exemplary claim chart concerning one way in which Defendants infringe claim 6 of the '829 Patent is attached as Exhibit 5.

29. Defendants have also indirectly infringed, and continue to indirectly infringe, the '829 Patent under 35 U.S.C. § 271(b) and (c).

30. Defendants have knowingly, intentionally actively aided, abetted, and induced others to directly infringe at least claim 6 of the '829 Patent, and continue to do so, by, for example, selling and offering access to devices compliant with IEEE 802.11 standards. *See* Exhibit 5.

31. Defendants have also contributed to the direct infringement of at least claim 6 of the '829 Patent under 35 U.S.C. § 271(c), and continue to do so, by, for example, supplying, with knowledge of the '829 Patent, a material part of a claimed invention, where the material part is not a staple article of commerce and is incapable of substantial noninfringing use. For example, Defendants provide, own, operate, sell, offer to sell, and/or import devices compliant with IEEE

802.11 standards (such as that shown in Exhibit 5) that are not a staple article of commerce and are incapable of substantial noninfringing use.

32. Defendants' infringement has been willful in view of the above and their failure to take any action, even after being put on notice, to stop their infringement or inducement of, or contribution to, infringement by others.

## SECOND CLAIM

**(Infringement of the '980 Patent)**

33. Plaintiffs re-allege and incorporate herein by reference paragraphs 1-32 of their Complaint.

34. The '980 Patent is generally directed to constructing a low-density parity-check (LDPC) code using a structured parity check matrix and expanding the base parity check matrix into an expanded parity check matrix.

35. Defendants have been on notice of the '980 Patent and a specific factual basis for their infringement of the '980 Patent since at least September 11, 2024. On information and belief, Defendants did not take any action to stop their infringement.

36. Defendants have, under 35 U.S.C. § 271(a), directly infringed, and continue to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claim 31 of the '289 Patent, by making, using, testing, selling, offering for sale, and/or importing hardware and/or software including devices compliant with IEEE 802.11 standards (excluding any products licensed under the '980 Patent), such as the Vivint Doorbell Camera Pro (VS-DBC350-WHT). An exemplary claim chart concerning one way in which Defendants infringe claim 31 of the '980 Patent is attached as Exhibit 6.

37. Defendants have also indirectly infringed, and continue to indirectly infringe, the '980 Patent under 35 U.S.C. § 271(b) and (c).

38. Defendants have knowingly, intentionally actively aided, abetted, and induced others to directly infringe at least claim 31 of the '980 Patent, and continue to do so, by, for example, selling and offering access to devices compliant with IEEE 802.11 standards. *See* Exhibit 6.

39. Defendants have also contributed to the direct infringement of at least claim 31 of the '980 Patent under 35 U.S.C. § 271(c), and continue to do so, by, for example, supplying, with knowledge of the '980 Patent, a material part of a claimed invention, where the material part is not a staple article of commerce and is incapable of substantial noninfringing use. For example, Defendants provide, own, operate, sell, offer to sell, and/or import devices compliant with IEEE 802.11 standards (such as that shown in Exhibit 6) that are not a staple article of commerce and are incapable of substantial noninfringing use.

40. Defendant's infringement has been willful in view of the above and their failure to take any action, even after being put on notice, to stop their infringement or inducement of, or contribution to, infringement by others.

## THIRD CLAIM

### (Infringement of the '847 Patent)

41. Plaintiffs re-allege and incorporate herein by reference paragraphs 1-40 of their Complaint.

42. The '847 Patent is generally directed to systems and methods for providing a user interface for controlling a display using an interface application to provide, in a multilayer display

arrangement, a container with interface controls that are selectable based on the magnitude of the motion of a manipulation of the display.

43. Defendants have been on notice of the '847 Patent and a specific factual basis for their infringement of the '847 Patent since at least September 11, 2024.  On information and belief, Defendants did not take any action to stop their infringement.

44. Defendants have, under 35 U.S.C. § 271(a), directly infringed, and continue to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claim 14 of the '847 patent, by having made, used, tested, sold, offered for sale, and/or imported hardware and/or software including detecting whether the touch or the contact is in an active area of one of the selectable objects when the comparison indicates that the magnitude of the movement of the touch or the contact is below the threshold value; and executing a function associated with a selection of the one of the selectable objects.  An exemplary claim chart concerning one way in which Defendants infringe claim 14 of the '847 patent is attached as Exhibit 7.

45. Defendants have also indirectly infringed, and continue to indirectly infringe, the '847 Patent under 35 U.S.C. § 271(b) and (c).

46. Defendants have knowingly, intentionally actively aided, abetted, and induced others to directly infringe at least claim 14 of the '847 Patent, and continue to do so, by, for example, selling and offering access to their products and services.  *See* Exhibit 7.

47. Defendants have also contributed to the direct infringement of at least claim 14 of the '847 Patent under 35 U.S.C. § 271(c), and continue to do so, by, for example, supplying, with knowledge of the '847 Patent, a material part of a claimed invention, where the material part is not a staple article of commerce and is incapable of substantial noninfringing use.  For example,

Defendants provide, own, operate, sell, offer to sell, and/or import products or software, including detecting whether the touch or the contact is in an active area of one of the selectable objects when the comparison indicates that the magnitude of the movement of the touch or the contact is below the threshold value; and executing a function associated with a selection of the one of the selectable objects (such as that shown in Exhibit 7), that are not a staple article of commerce and are incapable of substantial noninfringing use.

48. Defendant's infringement has been willful in view of the above and their failure to take any action, even after being put on notice, to stop their infringement or inducement of, or contribution to, infringement by others.

## FOURTH CLAIM

### (Infringement of the '756 Patent)

49. Plaintiffs re-allege and incorporate herein by reference paragraphs 1-48 of their Complaint.

50. The '756 Patent is generally directed to initiating and controlling updates of Internet-of-Things (IoT) devices.

51. Defendants have been on notice of the '756 Patent and a specific factual basis for their infringement of the '756 Patent since the date of the present Complaint. On information and belief, Defendants did not take any action to stop their infringement

52. Defendants have, under 35 U.S.C. § 271(a), directly infringed, and continue to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claim 14 of the '756 patent, by having made, used, tested, sold, offered for sale, and/or imported hardware and/or software including initiating and controlling updates of

devices. An exemplary claim chart concerning one way in which Defendants infringe claim 14 of the '756 patent is attached as Exhibit 8.

53. Defendants have also indirectly infringed, and continue to indirectly infringe, the '756 Patent under 35 U.S.C. § 271(b) and (c).

54. Defendants have knowingly, intentionally actively aided, abetted, and induced others to directly infringe at least claim 14 of the '756 Patent, and continue to do so, by, for example, selling and offering access to their products and services. *See* Exhibit 8.

55. Defendants have also contributed to the direct infringement of at least claim 14 of the '756 Patent under 35 U.S.C. § 271(c), and continue to do so, by, for example, supplying, with knowledge of the '756 Patent, a material part of a claimed invention, where the material part is not a staple article of commerce and is incapable of substantial noninfringing use. For example, Defendants provide, own, operate, sell, offer to sell, and/or import products or software, including initiating and controlling updates of devices (such as that shown in Exhibit 8), that are not a staple article of commerce and are incapable of substantial noninfringing use.

56. Defendant's infringement has been willful since the date of the present Complaint, in view of the above and their failure to take any action to stop their infringement or inducement of, or contribution to, infringement by others.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A. That Defendants have infringed the applicable Asserted Patents, and unless enjoined, will continue to infringe one or more of the applicable Asserted Patents;

B. That Defendants' infringement of one or more of the applicable Asserted Patents has been willful;

C. That Defendants pay Plaintiffs damages adequate to compensate Plaintiffs for Defendant's past, present and future infringement of the applicable Asserted Patents, together with interest and costs under 35 U.S.C. § 284;

D. That Defendants pay pre-judgment and post-judgment interest on the damages assessed;

E. That Defendants pay Plaintiffs enhanced damages pursuant to 35 U.S.C. § 284;

F. That Defendants be enjoined from infringing the applicable Asserted Patents, or if their infringement is not enjoined, that Defendants be ordered to pay ongoing royalties to Plaintiffs for any post-judgment infringement of the applicable Asserted Patents;

G. That this is an exceptional case under 35 U.S.C. § 285; and that Defendants pay Plaintiffs' attorneys' fees and costs in this action; and

H. That Plaintiffs be awarded such other and further relief, including equitable relief, as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury on all issues triable to a jury.

May 19, 2025

Respectfully submitted,

*/s/ Adam Adler by permission   Claire Abernathy Henry*
Adam Adler – LEAD ATTORNEY
Naveed Hasan
Reichman Jorgensen Lehman & Feldberg LLP
1909 K Street, NW, Suite 800
Washington, DC 20006
Tel: (202) 894-7310
nhasan@reichmanjorgensen.com

Matthew G. Berkowitz
Yue (Joy) Wang
Reichman Jorgensen Lehman & Feldberg LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Tel: (650) 623-1401
mberkowitz@reichmanjorgensen.com
ywang@reichmanjorgensen.com

Caroline Walters
Reichman Jorgensen Lehman & Feldberg LLP
400 Madison Avenue, Suite 14D
New York, NY 10017
Tel: (212) 381-1965
cwalters@reichmanjorgensen.com


Of Counsel:

Andrea L. Fair
Texas Bar No. 24078488
Claire Abernathy Henry
Texas State Bar No. 24053063
**MILLER FAIR HENRY PLLC**
1507 Bill Owens Pkwy.
Longview, TX 75604
Telephone: (903) 757-6400
andrea@millerfairhenry.com
claire@millerfairhenry.com


*Attorneys for Plaintiffs Malikie Innovations Ltd.
and Key Patent Innovations Ltd.*